Hear ye, hear ye, hear ye. The United States Court of Appeals, 11th Circuit, is now open according to law. God save the United States and His Honorable Court. Good morning. This morning we have only two appeals to hear. We're familiar with your cases. We've read your briefs. We've read the authorities that you have cited in your briefs. We've looked at the record. And you have limited time this morning, so when it is your time to speak, you should feel free to go straight to the heart of your argument. You do not need to educate us about the background of your case. We understand it. We're probably going to have some questions. If the court has a question, please do stop and try to help us with the questions that we have. And be mindful of the clock. When the clock expires, when your time expires, it's time to wrap it up. But if you're answering a question from the court, feel free to finish your answer, even if that extends it a little bit further. But do be mindful of the clock. Our first case this morning is Archer v. America's First Federal Credit Union. Mr. Archer, we're going to hear from you first. But before we do, I wanted to give you a little bit of a perspective. I'm only speaking for myself this morning. But I wanted to tell you something that concerns me about the case and give you a little bit of a background of what concerns me. So we have an issue in this case, as you well know, the issue that the district court ruled on about the statute of limitations, whether it expired and whether there was equitable tolling of the statute of limitations. But there's also another ground on which we could affirm the district court potentially. And that is the ground about res judicata. Now, as I understand what occurred here, there was a separate litigation, a separate lawsuit between you and the credit union that occurred in the state courts. And it went all the way to the Supreme Court of Alabama. And the doctrine of res judicata means that when the same parties have a dispute about some facts or some transaction between them, that they really have to bring up all the issues about those facts and about those transactions in that lawsuit. And they can't split those between different courts and different actions, different lawsuits. It all has to be litigated in one lawsuit. And once a lawsuit like that is litigated fully through a court system, it could start in the federal court, or it could start in the state courts, or you could have two in the federal court system or two in the state court system. But once one of them has been fully resolved, and a final judgment has been entered, then the doctrine of res judicata says it's over. That means everything not only that was actually argued in the case, but everything that could have been argued in that case is now resolved. And you can't re-litigate. You can't, you know, re-argue or get a do-over, so to speak, in the other case. And my concern about this, as I understand it, is that the litigation that went through the state court was an ejectment action. And the state court decided that the credit union had validly foreclosed on your home. There were arguments that were made by your lawyer, you were represented by a lawyer in that litigation, about the real estate, the federal law that is at issue in this case. Maybe not exact same arguments, but at least some arguments about that, right? And to the extent that you could have made exactly the same arguments, that court system was open and available to you to make those arguments. And so the doctrine of res judicata, at least for me, would suggest you had your opportunity to raise whatever argument you were going to make about this ejectment action and foreclosure and the validity of it, and whether the credit union complied with this federal law or not. So you can certainly, you should feel free to address any argument you want to this morning, but I wanted you to know at least where I was coming from in terms of that alternative, what we call an alternative argument, that other basis for potentially affirming the district court. If whether the district court addressed it or not, it was something that was raised and is still being raised here by the credit union. So now we'll begin your time. Okay. Okay. Well, good morning, your honors, and it may please the court. My name is Louis Archer. This is my wife, Sheree Archer, and we are both appellants in this case, and I'm representing myself and my wife, Sheree. First of all, out of the bat, I want to say, I know that this court does not chitchat, but gets straight to the question before the court. What I would like to say that I am overjoyed that the 11th Circuit Court, which is one notch below the Supreme Court of the land, would take the time to come to us wherever we are in the middle of this pandemic to hear about our dilemma concerning our home with this defendant. We really appreciate that. With what you mentioned, Chief Judge Carter, does compulsory counterclaim preserving the federal charges as compared to compulsory counterclaim does not play a part in the state? You know, as I was mentioning, you don't really get to ask us questions, but I'll be happy. I'll be happy to tell you that when I was explaining the doctrine of res judicata earlier, part of the point is whether it's even a compulsory counterclaim or not, if it's an argument that involves the same facts or transaction, the same basic dispute, if it's an argument or a claim or a complaint or a counterclaim, if a defense, any of those kinds of things that you could have raised in that case against the same party, and at the end of the day, a final judgment was entered and you lost, you don't get a second bite at the apple in another court system and in another lawsuit. That's what the doctrine is about. Mm-hmm. So I'll read what I have, Your Honor, if I'm repeating myself, if you can let me know. Well, what I have here is a question. We're here while considering whether to toll our statutes of limitation period in this restful case of the district court error in context when it did not compare our diligence to the diligence of reasonable people who were tortured by this defendant. Your Honor, I think that plays a big part in this case in that when I went to the lawyer and I realized that specific instructions were found to go to did not want to go to state court, I knew federal court. And as I think back, I realized that torture is hard to get around because it was after you've seen what we went through, when I sat with that lawyer, my wife was in a coma and the lawyer was looking at me like I was nuts because I remember telling him, he thought, well, this credit union had sure pushed him over the you know, God is in this. In any case, so that plays a part, that torture part. So what is the behavior of people in that state of mind? I have here, torture is a small word with tremendous consequences that alters a person's behavior entirely. Torture changes any context tremendously. I've got here in South Seattle versus how you saw that. One of the problems I'm having is that I understand you had a lawyer and your contention is that you told him you wanted to raise issues under RESPA in federal court and you say your lawyer didn't do that. But it's pretty clear your lawyer did raise issues about RESPA in state court. And maybe you would have liked for him to have done that in federal court. Eventually, you have a federal lawsuit about it. But the fact is that comes back to what my problem is with argument under RESPA that you're raising here. In fact, the fact did raise some of those arguments, at least some of them in state court. And so you really only get one bite at the apple to make those kinds of arguments. And they were made or some of them could have been made there. And that case ended up ending in a final judgment in favor of the credit union. Yes, your honor. And as I look back, I recognize that the credit union was deliberately using up our statute of limitation. In other words, the credit union was at work here to accomplish a purpose. As I look back and see that that was part of the plan to use up our limitation. I remember. Well, the statute of limitations would not have prevented you from making every argument you wanted to make in state court. Yes, you are already you are already there. You can make whatever argument you want. Yes, yes. As far as as far as myself, I see. I just I would not I was told that I would be I see what you're saying, your honor, that it could have been made in state in state. But with me, just with my with what I was told, I was told that you got to go straight to federal court. You're going to you're not going to get any you're going to be wasting your time at state court to state court. I did not even entertain state court for half a second. I was told that, you know, that is going to be a total waste of time. So there's no way I saw me. So but and I realized that that's what the credit union had an upper hand in there. It took it took advantage of the fact that that I feel of mine and the credit union was definitely out of strategy there, your honor. It definitely had a strategy. And I remember simple questions being asked that took months to answer, you know, and if it's if it's as far as that, I would have gone if it's maybe I should have represented myself. Well, I couldn't. I wasn't sitting like to represent myself, your honor. But speaking speaking of that, Mr. Archer, I want to make sure I understand one thing in the appeal in the Alabama state court system. You you did represent yourself, correct? Right. When I ran out of money. Right. Yes. That's what I took over. We're not on money. I took over. And then that's when I as soon as I found out it was not in federal court, I didn't ask. So I reserved the federal charges and I followed the rule. What I was told when I called, they said, here's a look at the flowchart on the Web page. They said they gave me was 14 days. They said to just file in the federal court. So I thought I was on track. I didn't even know there was an issue there. I thought I was well on track. And that's why I filed the federal charges. I found out that it was not what the status of saying work. So from my perspective, I was doing everything that I knew to do. And again, can't leave out the torture, you know, under the considered circumstances. And, you know, as a court sees, it's a miracle that my wife is alive today, you know, because this was pretty bad, what this credit union did, you know, and and they even turned turn our home into a torture chamber after they tortured us. They came banging on the door, ringing the doorbell, serving papers after my wife got out of the coma, you know, and so as far as so. So I so I did, once I took over, you know, which is a lot of money. I, I did everything I got everything that I was supposed to. And I didn't even realize it was an issue at all with the, you know, the federal because I'm not in. I didn't want it. I didn't want to think if it was me that I started, I didn't even want to think about state court, you know, and but due to my state of mind, I guess the lawyers. So well, this man doesn't even know that he's being sued. And in any case, that's part of what happened there. But I did. I wrote the reply brief in the, the state court, and the appeal in the state court. And I, and I, and I in there, I put those charges, the federal charges. Yeah. Yeah. That's fine. Do you have any questions? No. Mr. Archie got almost a minute left. I don't know if you have anything else you can reserve that minute to the added to my four. Yes, sure. Okay, I'll do that. Yeah, we'll give you five minutes of rebuttal. And we'll hear from Mr. McCarthy. Mr. McCarthy, you unmute. Okay. Yes. Thank you. May it please the court. My name is Terry McCarthy, and I represent the respondent America's first federal credit union. The district court's dismissal order should be affirmed for two reasons. First statute of limitations and equitable tolling is not warranted. And second, even if the court finds that tolling is warranted, as Judge Pryor mentioned, we've raised res judicata and the failure to timely assert compulsory counterclaims in the state court action. I think I'll just since Judge Pryor mentioned it, I'll quickly address the res judicata issue. First, all four elements of res judicata are present. We have a judgment on the merits and that judgment was affirmed on appeal by courts of competent jurisdiction. We have the exact same parties in both cases. So the third element's met. And then for the fourth element, the same cause of action element as Judge Pryor mentioned, res judicata includes everything, not just what was argued, but everything that could have been argued. And just a review of the record shows that every step of the way, starting with the answer and all the way through the appellate briefs, they were arguing in the RESPA. And then some of their complaint in this case is literally pretty much a cut and paste of arguments that were made and facts that were raised in the state court. So under the doctrine that this court can affirm on any ground that has support in the record, we believe that res judicata is a reason to affirm. As for equitable tolling, I'll briefly address that essentially what they are saying is that they instructed their lawyer to file a RESPA claims in federal court. The lawyer confirmed that they were filed in federal court, but under the standard in the 11th circuit is that an attorney negligence or a mistake, even gross negligence, that doesn't justify. Yeah, the problem, and maybe one of the reasons I can't say for sure, but one of the a judge of this court sent this case to oral argument was that that's a little bit more than negligence, isn't it? If you told your lawyer to do something, and the lawyer said he had done it, but in fact, had done something different, that would really be fraud, wouldn't it? Well, Your Honor, a couple of things. Number one is there's nothing, there's nothing in the record from the lawyer, so we don't know if the lawyer, if it's a mistake, if it was a mistake. Yeah, I know, but if we just take what they say for a moment and accept it as true, which is what I think the district court did. The district court basically accepted that, but inferred that it was negligence, and it's not clear to me that's negligence. So, I mean, if you accept that as true, which the district court apparently did, it would rise to a different level, wouldn't it? A more serious level, a more serious level of misconduct. Well, and again, there's no evidence of what the intent or what the lawyer actually did. I think, Your Honor, mentioning fraud, there's been a number of cases. It could be, maybe it's a different, it's a misrepresentation, okay? It would be a different level of misconduct than just negligence, wouldn't it? An intentional charge is what we're talking about. Well, there's nothing in the record that the lawyer did anything with any intent, and there's... Well, as I understand it, the lawyer supposedly told the archers that this is their allegation, is that it had been filed in federal court when, in fact, it had not. Yeah, and what the archers... Surely, a lawyer would know whether that was true or not. Well, what the archers just say in their platings is that they were misinformed, that the attorney confirmed that it was in federal court. But what we don't know yet is if that was a misunderstanding, if that was... Of course. ...anything in the records. Of course. But, I mean, we don't have anything to dispute that. Right, and it's their burden to show that equitable tolling is warranted. Right. And so, and your honor, and normally, under one thing that the 11th Circuit said in a fairly recent case, the case of Clemens v. Commissioner of the Alabama Department of Corrections from 2020, one thing that it said is that controlling case law is clear that an attorney mistakes or attributable to the client under agency principles. And then under agency principles... But affirmatively misleading your client would be different, wouldn't it? Potentially, if there was evidence in the record of that, that he affirmatively misled them. We don't know if it was a miscommunication or what all we have is what has been put in the platings. And so, but at the end of the day, the district court, you know, simply said, succinctly said that these are not extraordinary circumstances, and there hasn't been any cases or argument made to show that the district court got it wrong. And there's also the argument that was made, Mr. Archer argues, that the state court case was in the circuit court of Mobile County. And then there's circuit courts in both the state system and the federal system, and that that was potentially a reason he as a non-lawyer, didn't know any better. But I know this court on a number of occasions and said, you know, even when an attorney is right, so the judicial process, of course, I mean, you pointed out that about the absence of evidence, this was a motion to dismiss, right? Yes, it was. So this is an emotion for summary judgment. And they affirmatively allege that their attorney had misled them, right? They, they allege that for the, which we accept is true for the, for these purposes, right? Well, you don't have to, Your Honor, because the first time they did that was in response to the magistrate's report and recommendation was the first time they argued equitable polling. So even, even the district court could have, could have not considered that argument at that time, had they had the district court. But the district court did consider it. District court did. Yes, correct. And Your Honor, the other, another prong of this. Which do you think is the cleanest ground on which to affirm from your, your client's perspective? From my perspective, rest, rest judicata and in doing that, because I just think it's, it's clear that all four, that all four elements are met because, and then the questions that you're asking, the points that you're raising, you know, on equitable polling, but I think it is, it is clear that under the rest judicata, this, all four of those elements are met. And then in addition, a ground that, that, that I haven't even mentioned, but it's in our brief is we've argued that this was a compulsory counter claim. And I know something that Mr., that Mr. Archer argues in his briefs is that he, he did raise the two, the federal questions as compulsory counter claims. But the issue is he did, they did that in their reply brief at the, in the Alabama appellate courts, which was too late to raise, to raise that issue. And so it, Your Honor, I think our arguments are in the briefs and I've said kind of everything that, that I feel like I need to say from my perspective, if the, if the court has any questions, additional questions, I'd be happy to, to answer them. Otherwise we just ask that you affirm the decision of the district court. Judge Grant, Judge Chauflat, do you have any questions? Nothing to me. Okay. Thank you, Mr. McCarthy. Mr. Archer, you have five minutes that you saved for rebuttal. Your Honors, in our defense with the rest judicata, it, it must not be, the magistrate judge is not comfortable that it is settled here in our defense. It says that the fourth element. Here's the problem with that, Mr. Archer. It's true that the magistrate judge in the district court did not base their decision on that ground, but, but, but the credit union raised that as, as another way that they were entitled to win. And the arguments were made there and they've made them again. And you've responded to those arguments. So sometimes district courts rule on one ground, but the parties have argued, well, even if that's wrong, there's this other reason why the court could still be affirmed. And we have to consider that too. I see, Your Honor. And, and the, the, the fact that I would bring up the fact that, uh, that, uh, the credit union, uh, they, they, they, they remove all of the, what we submitted, they, uh, uh, struck out all of our, uh, uh, what we put in concerning this, uh, uh, concerning the, the, the federal charges, uh, I would point that out. In other words, as it, as it, uh, that what we are doing here in this, in this federal, uh, case that was brought up, the district took it out, struck out. Well, yeah. So I think there was a reference to that at the end of Mr. McCarthy's argument. What he, what he explained was, um, that you raised some of these issues once you were at the Supreme court of Alabama and, and they responded by saying you needed to have raised that by, uh, a compulsory counter claim and that you didn't. And therefore that's not something that's prop that was properly before the Supreme court of Alabama. And, and the point is, I think that when you were represented by a lawyer in the trial court, in the state courts and the circuit court, um, the lawyer should have made, perhaps should have made that argument, could have made that argument and didn't. And so it's, it's kind of the same problem of it's too late now to make that in another court system. And then a second lawsuit, you get, you get one bite at the apple, so to speak. And that's what's so wild about this case and extraordinary honor, because I can picture myself with this, uh, uh, a lawyer was thinking, Hey, uh, there's, here's a situation here. These people were just tortured, uh, that this man's wife, uh, one defendant might not live. And then this one is not in his right mind, might not be in his right mind, 30 days to be out of the house. And then here, uh, the, the, the, the, the credit union, the last thing on their mind that they had imagined would be the deal would be in front of the 11th circuit court talking about this case, not in their wildest dream, but because they thought they would have got away with it. And since, uh, uh, the, the defendant mentioned, uh, a compulsory counter claim, I would point out your honor that I noticed in, uh, document 16 on page two, uh, two 87, also document 12 page one 89. It's the same thing. I noticed that the defendant must not believe that, uh, uh, that, uh, what he said about compulsory counter claim, because I noticed that the pages, uh, beginning of document are super crystal clear. And then it just fuzzes up when it gets to the part about what I wrote down and then it clears up again. You know, I said, um, so that's, that's all that I, um, uh, that, uh, as far as, uh, that, uh, res judicata, you know, that's, uh, you know, that's, um, um, you know, that's, that's what I, it seems that something is not comfortable with that, you know, with that res judicata in our defense, that it's just something iffy about it. Um, even though they bring it up, well, that's the job to sing judicata like a cantata, but it seemed like there's something that's not quite solid with that just res judicata, your honor, with all the respect. Well, we'll look at it very carefully, Mr. Archer. I think we understand, uh, your arguments. We appreciate you, um, appearing before us this morning, uh, and, and, um, making your case. So we appreciate that from both sides. Um, and so your time is expired now and we're going to move on to the next case. Thank you. Thank you, your honor. Thank you.